## THOMPSON v. MISSOURI PAC. R. CO.

(Circuit Court of Appeals, Eighth Circuit. October 4, 1926.)

No. 7372.

**1. Appeal and error ⊚⇒1066.**

Instruction as to switchman's negligence in not using other ladder on car *held* not harmless, within Judicial Code, § 269, as amended (Comp. St. § 1246), evidence not presenting case where employee with two courses of action uses unsafe way.

**2. Master and servant ⊚⇒286(13).**

Evidence in switchman's action for injuries *held* to raise jury question as to railroad's violation of Safety Appliance Acts.

**3. Evidence ⊚⇒47.**

Circuit Court of Appeals does not take judicial notice of rules and regulations of Interstate Commerce Commission.

**4. Evidence ⊚⇒20(2), 34.**

Circuit Court of Appeals takes judicial notice of federal Safety Appliance Acts and that ladders on freight cars have been standardized as required by Comp. St. §§ 8618, 8619.

**5. Master and servant ⊚⇒100(1).**

Switchman's application for employment, if offered to show assumption of risks, was incompetent and immaterial, being invalid under federal Employers' Liability Act, § 5 (Comp. St. § 8661).

**6. Master and servant ⊚⇒273.**

Switchman's application for employment *held* improperly admitted, if offered for purpose of showing he had assumed ordinary risks, as being immaterial and confusing.

In Error to the District Court of the United States for the Eastern District of Missouri; Charles B. Davis, Judge.

Action by Ace Thompson against the Missouri Pacific Railroad Company. Judgment for defendant, and plaintiff brings error. Reversed, with directions.

W. H. Douglass, of St. Louis, Mo. (Douglass, Inman & Horsefield, of St. Louis, Mo., on the brief), for plaintiff in error.

Merritt U. Hayden, of St. Louis, Mo. (James F. Green, of St. Louis, Mo., on the brief), for defendant in error.

Before VAN VALKENBURGH and BOOTH, Circuit Judges, and PHILLIPS, District Judge.

BOOTH, Circuit Judge. This is a writ of error to review a judgment in favor of de-

fendant in error, defendant below, entered upon a verdict in a personal injury case. The complaint alleges that at the time of the accident plaintiff was in the employ of defendant as a switchman in the yards at Dupo, Illinois; that at the time of the accident both plaintiff and defendant were engaged in interstate commerce; that in the yard where plaintiff was working was a lead track running north and south; that at its southern end the lead track was on a grade, so that cars released at that point would run by gravity down the lead toward the north; that a number of switch tracks ran from the easterly side of the lead track, numbered respectively from south to north 25 to 32; that it was the custom of defendant in distributing cars to the switch tracks, to pull a train onto the grade or "hump" at the southern end of the lead, and there cut the cars off and run them down the lead to the desired switch track; that it was customary for a switchman to ride these cars down to the switch tracks; that the switches were operated by a man stationed in a tower near the south end of the lead; that the foreman in charge of the train which was being broken up, would designate which switch track each car was destined for by marking the number of the track on the car with chalk; that the towerman was so located that he could see the several switch tracks, and it was his duty to notify the foreman when a particular switch track was full; that it was then the duty of the foreman to switch no more cars onto that track until he had moved the cars already thereon with an engine so as to make more room.

[The complaint further alleges that about 3 a. m., December 26, 1924, plaintiff was helping to distribute the cars of a train onto said switch tracks; that at the time of the accident he was riding a car destined for switch track 31; that it was necessary to pass track 28 in order to reach track 31; that there were a number of cars on track 28, and one of them had been left so close to the lead track that there was not clearance for a car coming down the lead; that as plaintiff came near track 28, riding his car on the lead, he saw that his car would not clear the car on track 28, so he stopped his car just before it hit the car on track 28; that following plaintiff's car two other cars were coming down the lead destined for tracks beyond track 28; that seeing the danger of a collision between these two oncoming cars and his car, plaintiff tried to climb down the southwest corner of his car by making use of the handhold and ladder located near said corner; that

two of the rungs were missing; that this caused plaintiff to fall from said car, by reason of which he sustained serious injury.]

The complaint then charges as items of negligence on the part of defendant: Leaving the car on track 28 too close to the lead, failure by the towerman to notify the foreman of the dangerous location of the car on track 28; failure of defendant to move said car on track 28 from its dangerous location; sending the car upon which plaintiff was riding down the lead where it would strike the car on track 28; failure to provide a safe and suitable ladder on the car upon which plaintiff was riding, as provided by the federal Safety Appliance Acts.

Defendant in its answer admitted that it and plaintiff were engaged in interstate commerce at the time of the accident, denied the other allegations of the complaint, and set up assumption of risk and contributory negligence on the part of plaintiff. The reply was a general denial.

It is thus seen that the issues were: Negligence of defendant as to its common-law duties; negligence of defendant as to a statutory duty; assumption of risk and contributory negligence on the part of plaintiff. With the issues thus formed, the case proceeded to trial. The court in its charge to the jury eliminated from consideration a good many of the issues, using the following language:

"The petition was read to you, and there were a good many statements of negligence in that petition. And likewise the answer was read, and there were a good many defenses set up in the answer. Now, much of that has been eliminated, and all of the assignments of negligence, as we lawyers speak of them, contained in the petition, are withdrawn from your consideration, except one, and this is the allegation that the defendant violated what is known as the federal Safety Appliance Acts, in that it failed to have grab hooks or irons, or a ladder, on the side of this car. Plaintiff asserts that there was a failure in that respect and that the plaintiff was injured as a result of that failure. The defendant denies that; and that is the issue which you have to determine. * * * Defenses set up by the answer of the defendant in this case, assumption of risk and contributory negligence, are, by virtue of this narrowing of the issue, eliminated from the case."

The court left to the jury the questions whether defendant violated the provisions of the federal Safety Appliance Acts in failing to have a secure ladder on the corner of the

car where plaintiff undertook to climb down; whether such failure by defendant, if it existed, was the direct, proximate cause of plaintiff's injuries.

Counsel for plaintiff states that the court was in error in charging that all assignments of negligence were withdrawn except violation of the federal Safety Appliance Acts. Such was the understanding of the court, however, as distinctly stated in the memorandum on the motion for a new trial; and inasmuch as no exception was taken to the charge of the court in respect to this matter, and no mention was made of this alleged mistake of the court in the motion for new trial thereafter made, we conclude that the court was correct in the position taken.

[1] There are two assignments of error. The first challenges the admission in evidence of an application for employment signed by plaintiff; the second relates to a portion of the charge of the court to the jury. We shall take them up in reverse order. The court charged as follows:

"Now, then, to come to the issue which you are to decide: If you believe that on the 26th day of December the plaintiff was engaged in the performance of his duties and attempted to climb off the top of the car of the defendant that was switched by it in its yard * * * and if you further find that the car was not equipped on the side at one end with secure grabirons or handholds, and that one or more of said grabirons or handholds at the side of the car or end where the plaintiff attempted to climb off was missing, and that while plaintiff was climbing off of said car he fell and injured himself, and that the fall and injury to the plaintiff were caused in whole or in part because the grabirons or handholds of the car on the side where plaintiff was climbing off were insecure or were off, if you find these to be the facts in the case, then your verdict ought to be in favor of the plaintiff."

Further along the charge was as follows: "* * * If you believe that the northeast corner, that is, the corner that sideswiped, as the witnesses say, with the other car, if you believe that that was equipped with secure grabirons or handholds, and that the plaintiff could have used that handhold and got off of the car, if you believe that that was possible for him to have used that with safety to himself, but that, instead of doing that, he went to the rear of the car, to the southwest corner, and attempted to alight from that corner, and if that in his act in so doing was the sole cause of his injury, if you find those to be the facts, then the plaintiff ought

not to be permitted to recover, and your verdict should be in favor of the defendant."

Exception was duly taken to this last paragraph, and it is challenged by the second assignment of error. The evidence for the plaintiff tended to show that the accident happened substantially as alleged in the complaint (see allegation in brackets, supra).

The instructions in the first paragraph above quoted correctly stated the law, and were applicable. The later instruction did not purport to be a qualification of the earlier, but was given independently. Just what its purpose was is not clear. The court in its memorandum on the motion for new trial referred to it and said that it was requested by the defendant. The court further said in reference to this instruction:

"It was not intended to be an instruction on contributory negligence and we do not so regard it. As it now appears the instruction might well have been refused. How the jury could have found from the evidence that the plaintiff could have descended in safety the ladder at the northeast corner of the box car is not easy to comprehend. That was the corner that was about to come in contact with another car on a side track. Plaintiff saw this approaching danger and tried to escape it. The northeast corner of the box car did strike the other car before he was able to reach the ground. Yet this instruction authorized the jury to exonerate the defendant in the event that plaintiff could have got off the car at that corner in safety at that very time. It is inconceivable that the jury was influenced by this instruction to return a verdict for defendant. In other words, in our judgment, this instruction did not affect the outcome of the case."

We agree with the trial court that the instruction might well have been refused. We go further and say that in our judgment the giving of it was error. The instruction was ungrammatical, confusing, inconsistent with the instructions theretofore given, and did not correctly state the law applicable to the case. The evidence did not present a case where an employee having two courses of action open—one known to be safe and the other unsafe—chooses the unsafe way. On the contrary, the evidence disclosed that the plaintiff chose what appeared to be the safer of two courses of action. Whether the jury was influenced by the instruction, we cannot say. Such a result was, however, in our opinion, neither impossible nor improbable. It can hardly be considered harmless error to give to a jury an erroneous instruction on a vital question in the case on the the-

ory that the jury will discover that it has no application to the facts. Such errors do not come within the purview of section 269, Judicial Code, as amended by Act Feb. 26, 1919 (40 Stat. 1181 [Comp. St. § 1246]).

[2] It is contended by defendant that, even though there was error in the charge of the court, yet the judgment should be affirmed, for the reason that there was no substantial evidence tending to establish a violation by defendant of the federal Safety Appliance Acts, or tending to establish that such violation, if any existed, was the proximate cause of the injury to plaintiff. We cannot agree with this contention. There was substantial evidence that at least one of the rungs of the ladder at the corner of the car where plaintiff tried to climb down was missing. Plaintiff and the witness McFarland both testified to this effect. Plaintiff was an experienced switchman, accustomed to climbing up and down ladders on box cars. His testimony that he tried, but failed, to find the rungs with his foot as he held on to the handhold on the top of the car, was in itself substantial evidence.

[3, 4] But it is said that there was no proof of just how many rungs were required to be in the ladder by the rules of the Interstate Commerce Commission. Such proof was not necessary. While this court does not take judicial notice of the rules and regulations as such of the Interstate Commerce Commission (Robinson v. B. & O. R. Co., 222 U. S. 506, 32 S. Ct. 114, 56 L. Ed. 288), yet it does take judicial notice of the several federal Safety Appliance Acts, and also of the fact of common knowledge that ladders on freight cars had been standardized as required by sections 2 and 3 of the Act of April 14, 1910 (36 Stat. 298 [Comp. St. §§ 8618, 8619]), long prior to the time of this accident. The purpose of standardizing them was well stated by the Supreme Court in Illinois Central R. Co. v. Williams, 242 U. S. 462, 466, 37 S. Ct. 128, 129 (61 L. Ed. 437):

"It is equally clear that the purpose of the third section is to require that the safety appliances 'provided for by section 2 of this act' shall ultimately conform to a standard to be prescribed by the Interstate Commerce Commission; that is, that they shall be standardized, shall be of uniform size and character, and so far as ladders and handholds are concerned, shall be placed as nearly as possible at a corresponding place on every car, so that employees who work always in haste, and often in darkness and storm, may not be betrayed, to their injury or death, when they instinctively reach for the only

protection which can avail them when confronted by such a crisis as often arises in their dangerous service. It is for such emergencies that these safety appliances are provided—for service in those instant decisions upon which the safety of life or limb of a man so often depends in this perilous employment—and therefore this law requires that ultimately the location of these ladders and handholds shall be absolutely fixed so that the employee will know certainly that night or day he will find them in like place and of like size and usefulness on all cars, from whatever line of railway or section of the country they may come."

The provisions of the federal Safety Appliance Acts required that after July 1, 1911, ladders on freight cars should be secure; that within a limited period thereafter, to be fixed by the Interstate Commerce Commission, the ladders should be not only secure but standardized. In the case at bar it is immaterial whether a standardized ladder was required to have five or six rungs. The evidence tended to show that at least one of the rungs was "missing." Such a ladder on the side of a boxcar was not a "secure ladder," within the meaning of the federal Safety Appliance Acts. If a rung was "missing," there was a violation of those acts.

Nor was there failure of evidence to show causal connection between the defective ladder and the injuries to plaintiff. The testimony of plaintiff was to the effect that he held onto the grabiron on top of the car, trying to find the rungs on the side of the car with his feet until his handhold was torn loose, and that then he dropped to the ground and was injured. This was substantial evidence of the causal connection.

[5, 6] In view of the necessity of another trial, we advert for a moment to the assignment of error relative to the introduction in evidence of the application for employment signed by plaintiff. The portion of the application objected to read as follows:

"Mr. W. L. Yowell, in employ of Missouri Pacific Railroad Company as general yardmaster, has this day informed me of the duties connected with the employment I am about undertaking, viz. that of switchman, and has explained to me that the performance of said duties will expose me to great danger, the risk of which I assume for myself, and that I must use proper and constant care to avoid injury to myself and others. I have received a copy of the time-table containing the printed rules and regulations of said carrier, with which I am to make myself familiar, and by them and such additions'

thereto as may be made from time to time agree to be governed."

We think the objection to this document should have been sustained. If the purpose of offering it was to show merely that plaintiff had assumed the ordinary risks incident to the employment, the document was immaterial and confusing, since under it plaintiff assumed no risks additional to those which the law required him to assume, in the absence of an agreement. If the purpose of offering it was to prove that plaintiff had agreed to assume the risks of defendant's negligence, then the document was incompetent and immaterial, inasmuch as such a contract would be invalid under section 5 of the federal Employers' Liability Act (Comp. St. § 8661) Robinson v. B. & O. R. Co., 237 U. S. 84, 35 S. Ct. 491, 59 L. Ed. 849; Rief v. Great Northern Ry. Co., 126 Minn. 430, 148 N. W. 309; Brant v. C. & A. Ry. Co., 294 Ill. 606, 128 N. E. 732.

Judgment reversed, with directions to grant a new trial.