John B. Midden, Administrator of Estate of Theresa Midden, Deceased, John B. Midden, and Gertrude Ann Midden, Plaintiffs-Appellees, v. Allstate Insurance Company, Defendant-Appellant.

Gen. No. 10,007.

Third District.

October 19, 1955.

Rehearing denied November 25, 1955.

Released for publication November 25, 1955.

Giffin, Winning, Lindner & Newkirk, of Springfield, for appellant; Alfred F. Newkirk, James M. Winning, and Walter W. Siebert, all of Springfield, of counsel.

Roberts & Kepner, of Springfield, for appellees; Mark O. Roberts, and Maurice W. Kepner, both of Springfield, of counsel.

MR. JUSTICE REYNOLDS delivered the opinion of the court.

This is defendant Allstate Insurance Company's appeal from judgments of the Circuit Court of Sangamon County entered upon jury verdicts in favor of plaintiffs in their action brought upon an automobile public liability insurance contract issued by defendant to one Joseph Ingolia. The evidence showed the material facts surrounding the dispute to be as follows:

On October 25, 1947, defendant issued an automobile public liability insurance contract to Joseph Ingolia, providing, among other coverages, bodily injury and property damage insurance with a maximum limit of $40,000. By the terms of the policy Ingolia was insured while operating a 1930 Ford automobile, which he then owned. However, the policy included the following terms:

"VII. TEMPORARY USE OF SUBSTITUTE AUTOMOBILE.

"While an automobile owned in full or in part by the named insured is withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction, such insurance as is afforded by this policy for bodily injury liability, for property damage liability and for medical payments with respect to such automobile applies with respect to another automobile not so owned (meaning "owned in whole or in part by the insured") while temporarily used as the substitute for such automobile. This insuring agreement does not cover as an insured the owner of the substitute automobile or any employee of such owner." (Emphasis and bracketed insert supplied.)

and

"IX. AUTOMATIC INSURANCE FOR NEWLY ACQUIRED AUTOMOBILES.

"If the named insured who is the owner of the automobile acquires ownership of another automobile and

501

so notifies the company within thirty days following the date of its delivery to him, such insurance as is afforded by this policy applies also to such other automobile as of such delivery date:

"(a) if it replaces an automobile described in this policy, but only to the extent the insurance is applicable to the replaced automobile. . . ."

On June 13, 1948, Ingolia, while driving a 1937 Chevrolet, collided with an automobile being driven by one Theresa Midden. As a result of that collision Ingolia and Theresa Midden died; John B. Midden and Gertrude Ann Midden suffered bodily injuries. Thereafter, on June 7, 1949, John Midden, individually and as administrator of the estate of Theresa Midden and Gertrude Ann Midden, instituted an action in the Circuit Court of Bureau County, Illinois, against Mary J. Ingolia, administrator of the estate of Joseph Ingolia, deceased, for wrongful death and personal injuries. Judgments for all the plaintiffs were entered in that action on July 31, 1950. Grounds for reversal predicated upon the proceedings in the Circuit Court of Bureau County, the nature of the judgments entered and their subsequent amendment are advanced by defendant but need not be discussed in view of the conclusion we reach upon the basic issue of the ownership of the automobile being driven by Mr. Ingolia at the time of the collision in question.

Plaintiffs' theory of recovery was and is that the 1937 Studebaker was automatically covered under the above-quoted section IX of defendant's policy because Ingolia had owned it less than the 30-day grace period for notice. With this proposition we agree. Next plaintiffs assert that the Studebaker was withdrawn from normal use within the meaning of section XII of the policy by reason of brake failure. There is substantial evidence to support that assertion. Finally, plaintiffs urge that Ingolia was using the 1937 Chevrolet as a

502

substitute for the disabled Studebaker at the time of the subject collision within the terms of section VII, that the Chevrolet was owned by Mrs. Ingolia, and that, accordingly, his operation of the Chevrolet was a covered risk. With this we cannot agree for it is abundantly clear from the competent evidence in the record that the Chevrolet was owned in full or in part by Ingolia and was, therefore, under the express terms of section XII disqualified as a substitute automobile.

The evidence showed that in April 1948, and more than 30 days prior to the collision which gave rise to this controversy, Ingolia purchased the 1937 Chevrolet which he was driving at the time of the collision; that he took an assignment in his own name of the certificate of title of the seller; that thereupon, on April 29, 1948, he executed a promissory note in the amount of $175 payable to Peoria Finance & Thrift Company, which note was secured by a chattel mortgage upon the Chevrolet; that the chattel mortgage was executed by him and contained a warranty that he owned the 1937 Chevrolet; that thereafter on June 1, 1948, he applied to the Illinois Secretary of State for issuance of a new certificate of title to the Chevrolet to be registered in his name but delivered to the Peoria Finance & Thrift Company; Ingolia stated in the title application, under oath, that he was the sole owner of the 1937 Chevrolet; that a certificate of title was issued to him in his name; that the license plates attached to the Chevrolet at the time of the collision were registered in Ingolia's name. There was no proof that Ingolia had notified defendant of his acquisition of the 1937 Chevrolet.

The evidence further disclosed that Ingolia's widow did not know how to drive and had no driver's license.

Ingolia's widow testified on behalf of plaintiffs that Ingolia had purchased the Chevrolet in April 1948 with funds withdrawn from their joint bank account which had been funded with the proceeds realized from their

sale of real estate owned in joint tenancy; that half of the money was hers and half was his; that Ingolia had purchased the car for the witness and their twenty-two-year-old daughter and had given the car to them; that it was the witness' car to use; that after its acquisition Ingolia continued to own and operate the 1930 Ford which was expressly covered by defendant's policy; that on June 3, 1948, and within 30 days of the subject collision, Ingolia traded in the 1930 Ford and acquired a 1937 Studebaker; that about June 7th or 8th, 1948, the brakes on the Studebaker failed; that while the Studebaker was withdrawn from service Ingolia used the 1937 Chevrolet and during such use was involved in the subject collision. Plaintiff did not call the daughter as a witness. The record is silent on the question whether she knew how to drive an automobile or had a driver's license.

On two occasions immediately following the collision Mrs. Ingolia stated to defendant's investigators in the presence of a reporter who took and transcribed the questions put to Mrs. Ingolia, and her answers, that Ingolia owned the 1937 Chevrolet. On cross-examination the questions put to her by the investigators and her answers were read to Mrs. Ingolia. She did not deny any of the questions or her answers as read. She admitted outright that she had made certain of the answers as read, she equivocated as to others by stating that she had not made the answers "in those words," and as to others she responded she "may have" so answered or that she "did not remember," or that she "couldn't say," or that she "could have" so answered.

Kevin D. Kelly, an attorney and investigator for defendant, testified without contradiction that the court reporter who accompanied him at the time he interviewed Mrs. Ingolia had died. He refreshed his recollection from the reporter's transcript and thereupon testified verbatim to the questions he put to Mrs. In-

504

golia and her responses, each of which had theretofore been read to Mrs. Ingolia. Robert L. McConnell, another investigator, similarly testified without contradiction to a subsequent interview of his with Mrs. Ingolia. It appeared that the court reporter who accompanied him at the interview was not produced as a witness because she was then actually engaged as official court reporter in a cause then on trial in the United States District Court in Peoria.

It also appeared from the evidence that Ingolia, as a side line to supplement his income, purchased used cars from time to time, repaired and overhauled them, and resold them.

■ Mrs. Ingolia's testimony that Mr. Ingolia had purchased the 1937 Chevrolet for her and her daughter and had given it to them and that she owned it, standing alone, was not evidence of such ownership. The testimony was a mere conclusion of the witness without facts or evidence to support it. McGeoch v. Hooker, 11 Ill. App. 649, 652–653 (1st Dist. 1882); Socony-Vacuum Oil Co. v. Lambert (Tex. Civ. App. 1944), 180 S.W.2d 456, 460; Casualty Underwriters v. Rhone, 134 Tex. 50, 132 S.W.2d 97, 99 (1939).

■ The burden was upon plaintiffs to prove that the 1937 Chevrolet when driven by Ingolia was covered by the policy sued upon, i. e., that the Studebaker, which defendant admits was the automobile covered by the policy, was temporarily out of use; that the 1937 Chevrolet was in temporary use by the insured in place of the Studebaker and that the insured was not the owner of the Chevrolet in whole or in part.

■ There is no competent evidence in the record upon which the jury could properly find that Ingolia was not the owner of the Chevrolet in whole or in part. On the other hand, the competent evidence in the record established the contrary. Even if the burden of proof upon the issue of ownership was upon defendant, it has sustained that burden.

505

■ Plaintiffs argue that defendant's letter of August 18, 1948, to the estate of Ingolia, cancelling the insurance policy and remitting the unearned portion of the premium is an admission by defendant that the policy covered the 1937 Chevrolet and insured Ingolia at the time of the collision. The letter recites:

"Gentlemen:

"Due to the accident of June 13, 1948, we understand you will no longer need insurance on the car involved and have terminated your policy as of that date."

Defendant's counsel do not respond to this contention of plaintiffs. We are of the opinion that the argument is without merit. There is nothing in the letter bearing on the question of ownership of the Chevrolet. In any event, the letter is addressed to Ingolia's estate and is consistent only with the theory that Mr. Ingolia was the owner of the Chevrolet. Plaintiffs counted on the policy on the theory that the Chevrolet was a temporary substitute for the Studebaker, which was the automobile primarily covered, and not upon the theory that the Chevrolet, rather than the Studebaker, was the automobile primarily covered. The letter does not purport to and does not alter the insurance contract upon which plaintiffs predicate their action.

Plaintiffs argue that the evidence respecting the title registration bears upon paper title, not legal title. As respects the issue in question the alleged distinction advanced does not aid plaintiffs' case. It is a play on words. The facts respecting title registration are evidence of acts of dominion ownership and control of the Chevrolet on the part of Ingolia. They are facts tending to disprove ownership, or at least exclusive ownership, by Mrs. Ingolia. Taken with other evidence in the record they establish that Ingolia owned the Chevrolet either in whole or in part.

The verdicts for plaintiffs were necessarily predicated upon a finding that Ingolia was not the owner in

whole or in part of the 1937 Chevrolet. In view of the facts above recited, there was no evidence from which the jury could so find. Accordingly, the trial court erred in not granting defendant's motion for directed verdicts and its motion for judgment notwithstanding the verdicts.

But plaintiffs assert that defendant failed in the trial court to challenge the jury's answer to a special interrogatory regarding the ownership of the 1937 Chevrolet; that the answer to that interrogatory supports the general verdict; that, accordingly, defendant is now precluded from challenging the sufficiency of the proof in support of the general verdicts. In this context plaintiffs rely upon Brant v. Chicago & Alton R. Co., 294 Ill. 606, 615; Rubottom v. Crane Co., 302 Ill. App. 58, and Brimie v. Belden Mfg. Co., 287 Ill. 11.

We have concluded from our examination of the cited cases that they are not applicable here and that defendant adequately preserved the question of the sufficiency of the evidence to support the verdicts.

In Rubottom v. Crane Co., supra, as in each of the cited cases, the jury returned answers to special interrogatories which were consistent with and in support of the general verdict. Thereafter, in post-trial motions the sufficiency of the evidence to support the general verdicts was challenged but no attack was made upon the answers to the special interrogatories. Accordingly, when on appeal appellant urged as error the failure of the trial court to set aside the verdict, the Appellate Court said, at page 66: "Under the authorities there are several ways by which a party may escape from being conclusively bound by the special finding of a jury: (1) by specific objection to the special finding on the motion for a new trial, or (2) by filing a specific motion to set aside the special finding when the motion for a new trial is made. Defendant resorted to neither of these motions. Under the decisions in this State a motion to direct a verdict at the end of plain-

tiff's case is not sufficient to preserve such right, nor is the general objection that the verdict was contrary to the weight of the evidence. Rockwood Sprinkler Co. v. Phillips Co., 265 Ill. App. 267, is precisely in point."

██ Here, however, defendant followed the teachings of the Rubottom case, for in its motions for judgment notwithstanding the verdict and, in the alternative, new trial, it specifically objected to the jury's negative answer to the interrogatory: "Was the 1937 Chevrolet sedan which was involved in the accident, owned in full or in part by Joseph Ingolia at the time of the accident?" Thus, in its motion for judgment notwithstanding the verdict defendant urged as point 6 thereof: "There was no competent evidence that the 1937 Chevrolet automobile was not owned by Joseph Ingolia at the time of the accident," and, as point 10 thereof, "The manifest weight of the evidence showed that the 1937 Chevrolet was owned at the time of the accident by Joseph Ingolia, deceased." In addition, attack was made upon the sufficiency of the evidence to support the general verdict.

This, we believe, was an adequately specific objection to the jury's answer to the special interrogatory regarding the ownership of the 1937 Chevrolet. It was couched in the language of the interrogatory and specifically directed the trial court's attention to the proof adduced upon the question of the ownership of the 1937 Chevrolet. Accordingly, defendant preserved the assigned error that there was no evidence to support the jury's answer to the special interrogatory and the general verdict, and avoided the rule announced in the above cited cases.

We have concluded that the only verdict which the jury could properly have returned in this cause was one in favor of the defendant. We believe that all of the evidence regarding the ownership of the 1937 Chevrolet pointed to the fact that Joseph Ingolia was from April 1948, through the date of the subject collision,

the owner thereof in whole or in part. The proof adduced by both parties showed that the car had been purchased with funds in which Ingolia had an interest; that he registered the car in his name; that he posted title to the car as collateral for a loan made to him; that the license plates affixed to the car at the time of the collision were registered in his name. These indicia all pointed to but one conclusion—that the 1937 Chevrolet was owned, in whole or in part, by Joseph Ingolia and was accordingly not eligible for automatic insurance as a substitute vehicle under section VII of defendant's policy.

██ We hold that under all the evidence, viewed in a light most favorable to plaintiffs, there is a total lack of evidence that Ingolia was not the owner in whole or in part of the 1937 Chevrolet. In fact the proof, even when so viewed, establishes the contrary. Heideman v. Kelsey, 414 Ill. 453, 457, 111 N.E.2d 538; Eckhardt v. Hickman, 349 Ill. App. 474, 477, 111 N.E.2d 199.

We have considered the various other grounds for reversal of the judgments and of the order denying defendant's motion for judgment notwithstanding the verdict and in the alternative for a new trial, which are advanced by defendant, as well as plaintiffs' counter-arguments. However, in view of our decision upon the basic issue, it is unnecessary to pass upon the other grounds urged for reversal.

In the light of the foregoing, the judgments of the court below upon the verdict and its order denying defendant's motion for judgment notwithstanding the verdicts are reversed and judgment is entered in favor of defendant upon its motion for judgment notwithstanding the verdicts.

Reversed.